# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| STEPHANIE BROWN, on behalf of herself and others similarly situated, | CIVIL ACTION FILE NO.: 5:23-cv-00009 |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| SAFE STREETS USA LLC and SAFEGUARD SECURITY & SURVELLIANCE, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Stephanie Brown (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Safe Streets USA LLC ("Safe Streets") to market its services through the use of pre-recorded telemarketing calls in plain violation of the

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA"). With respect to the call to Ms. Brown, it was sent by Safeguard Security & Surveillance, Inc. ("Safeguard").

3. Ms. Brown also alleges that Safeguard uses automated systems to make telemarketing calls for Safe Streets into Florida as well as to Florida residents that have placed themselves on the National Do Not Call Registry, and that by doing so, Safeguard and Safe Streets has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059 ("FTSA").

4. The recipients of these illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA and FTSA, and because the technology used by Safe Streets makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

5. Plaintiff Stephanie Brown is, and at all times mentioned herein was, an individual citizen of the state of Florida.

6. Defendant Safe Streets USA LLC is a Delaware limited liability company with its principal place of business in Garner, NC, in this District.

7. Defendant Safeguard Security & Surveillance, Inc. is a Connecticut corporation.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. This Court has specific personal jurisdiction over Safe Streets because the company resides in this District and Safeguard because it contracted with Safe Streets to do business in this District.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because the telephone calls at issue were organized from this District.

## TCPA BACKGROUND

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A)(iii). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous

disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The Florida Telephone Solicitations Act</u>

15. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

16. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

17. It is also a violation to make a call to a Florida number on the National Do Not Call Registry.

18. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

19. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

20. Defendant Safe Streets is a "person" as the term is defined by 47 U.S.C. § 153(39).

21. Defendant Safeguard is a "person" as the term is defined by 47 U.S.C. § 153(39).

22. Safe Streets offers home alarm services for ADT.

23. To increase its sales, and as part of a general cold-call based marketing scheme, Safe Streets markets ADT Services using pre-recorded voice calls to consumers, but does so through third parties such as Safeguard.

24. Plaintiff Brown's telephone number, 727-470-XXXX is assigned to a cellular telephone service.

25. That number has been on the National Do Not Call Registry since June of 2009.

26. The Plaintiff received at least one pre-recorded call from Safeguard on May 14, 2022.

27. The Caller ID for the call was (727) 457-9565.

28. The Caller ID was "spoofed" to make it appear like a local call.

29. The pre-recorded message was non-specific to the recipient and asked the call recipient if they had a security system and invited them to press a number if they did not have one and wanted to learn more.

30. The call was clearly pre-recorded because (a) it was sent with automated technology used to mask Caller IDs (b) it used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played (e) it had the options to press a number in response to the message.

31. After the recorded message was played, the Plaintiff spoke with "Alonso", who indicated that he worked for Safe Streets.

32. Safe Streets later identified Safeguard as the entity that was responsible for contacting the Plaintiff.

33. As such, the Plaintiff believes that Safeguard initiated the pre-recorded call.

34. "Alonso" marketed ADT's security services as part of his employment with Safe Streets.

35. Jose Febres then went to the Plaintiff's house on May 25, 2022 to follow up on the solicitation call.

36. Mr. Febres provided a business card to the Plaintiff.

37. The business card indicated that Mr. Febres worked for Safe Streets and provided his contact information.

38. The call was not necessitated by an emergency.

39. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## SAFE STREETS' LIABILITY FOR SAFEGUARD'S CONDUCT

40. For more than twenty-five years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

41. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

42. In fact, the Federal Communication Commission has instructed that sellers such as Safe Streets may not avoid liability by outsourcing telemarketing to third parties, such as Safeguard:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

43. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

44. Safe Streets is liable for Safeguard's conduct because it controls the manner and means of its telemarketing methods by:

    a) instructing them that they can use a call center;

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

7

  b)  advising them that they could use third parties to assist in the telemarketing;

  c)  requiring that Safe Streets approve all scripting of telemarketing work; and

  d)  providing qualifications for ADT customers to be sent to Safe Streets.

45. Safe Streets is also liable for Safeguard telemarketing calls, as it explicitly hired Safeguard to bring in new customers and knows it does so through telemarketing.

46. Safe Streets knew (or reasonably should have known) that Safeguard was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

47. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

48. Indeed, Safe Streets has previously been sued for the telemarketing conduct of its vendors.

49. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

51. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**TCPA Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) from August 19, 2021 through trial (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.

**Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call regarding Defendants' goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

**Florida Telephone Solicitation Act Do Not Call Registry Class:** All persons in the U.S., who, (1) received a telephonic sales call regarding Defendants' goods and/or services, (2) to a Florida number on the National Do Not Call Registry (3) since July 1, 2021.

52. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

53. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

54. Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

55. This Class Action Complaint seeks injunctive relief and money damages.

56. The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

57. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

58. The joinder of all Class members is impracticable due to the size of the Class and relatively modest value of each individual claim.

59. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

60. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) Whether the Defendants used pre-recorded message to send telemarketing calls;

    (b) Whether Safe Streets is vicariously liable for conduct of Safeguard;

    (c) Whether Defendants called Florida numbers on the National Do Not Call Registry;

    (d) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (e) whether Defendants' conduct constitutes a violation of the TCPA and FTSA; and

    (f) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

61. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

62. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are

committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

63. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

64. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**47 U.S.C. 227(b) on behalf of the Robocall Class**

65. Plaintiff incorporates the allegations from the prior paragraphs as if fully set forth herein.

66. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

67. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers or numbers for which they were charged per call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

69. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers or numbers for which they are charged per call using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

70. Plaintiff repeats and incorporates the allegations as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

72. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

73. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

74. Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

75. In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

76. Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

77. As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**THIRD CAUSE OF ACTION**
**Violation of the Florida Telephone Solicitation Act,**
**Fla. Stat. § 501.059**
**On Behalf of Plaintiff and the Florida Telephone Solicitation**
**Act National Do Not Registry Call Class**

78. Plaintiff repeats and incorporates the allegations as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act National Do Not Call Registry Class Members against Defendants.

80. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone" on the National Do Not Call Registry. *See* Fla. Stat. § 501.059(4).

81. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services,

soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

82. Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

83. In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent even though the Class members were on the National Do Not Call Registry.

84. As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.  Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff request a jury trial as to all claims of the complaint so triable.

Dated: January 10, 2023

PLAINTIFF, on behalf of herself
and others similarly situated,

**MAGINNIS HOWARD**

By: /s/ Karl S. Gwaltney
Karl S. Gwaltney
NC State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27612
Telephone: (919) 526-0450
Fax: (919) 882-8763
kgwaltney@maginnishoward.com
**Local Civil Rule 83.1(d) Counsel for Plaintiff**

**PARONICH LAW, P.C.**

By: /s/ Anthony I. Paronich
Anthony I. Paronich
MA State Bar No. 678437
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
**Notice of Special Appearance Forthcoming**

**HEIDARPOUR LAW FIRM, PPC**

By: /s/ Andrew Heidarpour
    Andrew Heidarpour
    DC Bar No. 1022137
    1300 Pennsylvania Ave. NW, 190-318
    Washington, DC 20004
    Telephone: (202) 234-2727
    Fax: (703) 237-1251
    aheidarpour@hlfirm.com
    **Notice of Special Appearance Forthcoming**

**KAUFMAN P.A.**

By: /s/ Avi R. Kaufman
    Avi R. Kaufman
    FL Bar No. 84382
    400 NW 26th Street
    Miami, Florida 33127
    Telephone: (305) 469-5881
    kaufman@kaufmanpa.com
    **Notice of Special Appearance Forthcoming**